IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FOUNDATION ANCILLARY SERVICES, § <br> L.L.C. d/b/a SURGICAL § <br> MONITORING SERVICES, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> UNITED HEALTHCARE INSURANCE § <br> COMPANY and UNITED HEALTHCARE § <br> OF TEXAS, INC., § <br> § <br> Defendants. § | CIVIL ACTION NO. H-10-1374 |

MEMORANDUM AND ORDER

Pending is Plaintiff Foundation Ancillary Services, L.L.C. d/b/a Surgical Monitoring Services' Motion for Remand (Document No. 28). After carefully considering the motion, response, and applicable law, the Court concludes that the motion should be denied.

I. Background

This is an action by a medical care provider to recover alleged underpayment of medical services from Defendants United HealthCare Insurance Company and United Healthcare of Texas, Inc. ("Defendants"). Plaintiff Foundation Ancillary Services, L.L.C. d/b/a Surgical Monitoring Services ("Plaintiff") filed this suit in state court, alleging only state law claims for Texas Insurance Code and Deceptive Trade Practices Act violations, negligence,

negligent misrepresentation, promissory estoppel, and quantum meruit.[1] Plaintiff, a "noncontracted," non-participating service provider that monitors patients during surgery, alleges that Defendants misrepresented the amount they would pay for the "reasonable and fair" medical services that Plaintiff provided to Defendants' insureds and then underpaid Plaintiff for those services.[2] Plaintiff does not have a provider agreement with Defendants, but secured assignments of ERISA benefits from patients.[3]

Defendants removed this action, asserting that Plaintiff's claims were completely preempted by ERISA, 29 U.S.C. §1001 et seq., because Plaintiff seeks recovery of benefits under ERISA plans.[4] Plaintiff challenges removal, asserting that ERISA does not completely preempt its claim because (1) Plaintiff is not a "participant, beneficiary, or fiduciary" such that it could bring this claim under section 502(a) of ERISA, 29 U.S.C. § 1132; and (2) Plaintiff's claims rely on an independent legal duty rather than the ERISA plan, as it brings a claim for underpayment for

---

[1] Document No. 1, ex. C (Orig. Pet.).

[2] Id., ex. C ¶ 10-11, 26.

[3] See id., ex. C ¶ 10; see also Document No. 31, ex. D at UHC 0254-84, boxes 13, 27 (authorizing and accepting assignments). Plaintiff does not contest that the insurance plans at issue in this case are all ERISA plans.

[4] Document No. 1 (Notice of Removal).

2

services rendered in contravention of Defendants' alleged representations.

## II. Legal Standard

Cases filed in state court which arise under the "Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). "[W]hen faced with a motion to remand, it is the defendant's burden to establish the existence of federal jurisdiction over the controversy." Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397 (5th Cir. 1998). Any doubt as to the propriety of the removal is to be resolved in favor of remand. See Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000); Walters v. Grow Group, Inc., 907 F. Supp. 1030, 1032 (S.D. Tex. 1995) (Harmon, J.).

When a plaintiff's state law claims are completely preempted by federal law, the plaintiff's claims arise under federal law, thereby permitting removal. See Aetna Health Inc. v. Davila, 124 S. Ct. 2488, 2494 (2004); Metro. Life Ins. Co. v. Taylor, 107 S. Ct. 1542, 1546 (1987). ERISA completely preempts "any state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy" provided in section 502(a). Davila, 124

S. Ct. at 2495.[5] Section 502(a)(1)(B) authorizes a participant or beneficiary of an ERISA plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Because this section provides a civil enforcement cause of action, it "completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action" and can therefore be removed. Haynes v. Prudential Health Care, 313 F.3d 330, 333-34 (5th Cir. 2002) (quoting Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999)). ERISA completely preempts a state-law cause of action "if an individual, at some point in time, could have brought his claim under [section 502(a)], and where there is no other independent legal duty that is implicated by a defendant's actions." Davila, 124 S. Ct. at 2496.

---

[5] ERISA's other preemption provision, section 514(a), 29 U.S.C. § 1144(a), provides for ordinary *conflict* preemption of state laws that "relate to" any employee welfare benefit plan. State law claims that fall outside section 502(a), even though preempted by section 514, follow the well-pleaded complaint rule *and do not confer original or removal jurisdiction*. See Franchise Tax Bd. of the State of Cal. v. Const. Laborers Vacation Trust, 103 S. Ct. 2841, 2853-55 (1983); Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999) ("When the doctrine of complete preemption does not apply, but the plaintiff's state law claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the [§ 514] preemption issue can be addressed and resolved.").

III. <u>Discussion</u>

Plaintiff's first contention that it could not bring suit under section 502(a) because it is not a "participant, beneficiary, or fiduciary" is unavailing because Plaintiff accepted assignments from its patients in order to receive payment directly from Defendants.[6] It is well settled that a healthcare provider can assert a claim under section 502(a) as an assignee of a participant or beneficiary in order to claim plan benefits. *See* <u>Tango Transport v. Healthcare Fin. Servs. LLC</u>, 322 F.3d 888, 891 (5th Cir. 2003) (collecting cases); <u>Hermann Hosp. v. MEBA Med. & Ben. Plan</u>, 845 F.2d 1286, 1289 (5th Cir. 1999) (health care provider has standing to sue under section 502(a) as an assignee of a participant or beneficiary in order to receive plan benefits); *see also* <u>Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.</u>, No. H-05-4389, 2006 WL 1663752, at *5 n.2 (S.D. Tex. June 13, 2006) (Rosenthal, J.). Hence, Plaintiff could have brought a claim under section 502(a) as assignee of its patients for the alleged underpayment of benefits.

However, in order to be subject to complete preemption and hence removal to federal court, Plaintiff must have both standing to sue under section 502 and the lack of an independent legal duty supporting a state law claim. <u>Davila</u>, 124 S. Ct. at 2496.

---

[6] *See* Document No. 31, ex. D at UHC 0254-84, boxes 13, 27.

Plaintiff relies on <u>Lone Star OB/GYN Associates v. Aetna Health Inc.</u>, 579 F.3d 525 (5th Cir. 2009), for the proposition that its claims are independent of any legal duty preempted by ERISA, because it challenges the rate of reimbursement rather than the right to reimbursement. In <u>Lone Star</u>, the healthcare provider had entered into a contract or provider agreement with the insurer, and the agreement delineated the rights and responsibilities of the parties. <u>Id.</u> at 530-31 ("Lone Star's claims . . . arise out of the independent legal duty contained in the *contract* . . . ." (emphasis added)). In contrast to <u>Lone Star</u>, Plaintiff and Defendants here have no provider agreement between them that would form an independent basis for recovery. Resolving this dispute is possible only by reference to and interpretation of the patients' ERISA plans, rather than any other contract. Hence, <u>Lone Star</u> does not apply.

Plaintiff's reliance on <u>Memorial Hospital System v. Northbrook Life Insurance Co.</u>, 904 F.2d 236 (5th Cir. 1990) is similarly misplaced. In <u>Memorial</u>, the insurer represented to plaintiff hospital that the patient was covered, but the insurance in fact was nonexistent at the time of her hospital stay; thus, there was no coverage under any ERISA plan. <u>Id.</u> at 238, 247-48. Here, unlike the patient in <u>Memorial</u>, Plaintiff's patients were covered to some extent by Defendants' plans. In fact, Plaintiff admits receiving payments for services under the plans but seeks

6

additional payments for services on the basis of Defendants' representations about the extent of the coverage for the patients. This dispute therefore centers on the *amount of coverage* that each patient enjoyed under the plan, rather than the *existence of coverage*.

In Metroplex Infusion Care, Inc. v. Lone Star Container Corp., the plaintiff medical provider called a patient's insurer to verify her benefits and eligibility, and the defendant confirmed coverage. 855 F. Supp. 897, 899 (N.D. Tex. 1994) (Solis, J.). Even though the insurer or its agents agreed to pay the costs of treatment, it only paid for a portion of the bill. Id. Following the Fifth Circuit's reasoning in Hermann Hospital v. MEBA Medical & Benefits Plan, 959 F.2d 569, 577-78 (5th Cir. 1992) ("Hermann II") and Hermann Hospital v. MEBA Medical & Benefits Plan, 845 F.2d 1286, 1291 (5th Cir. 1988) ("Hermann I"), the court found that plaintiff's claims related to an ERISA plan and were therefore preempted. Metroplex, 855 F. Supp. at 901. Metroplex explained the distinction between the preemption of state claims based on *nature and extent* of coverage rather than the *existence* of coverage:

> The apparent contradiction between the Hermann cases and Memorial may be resolved in light of their underlying factual differences: whereas there was no ERISA coverage in Memorial, so that the hospital would have had no recourse under either ERISA or state law had its state law claims been preempted, in Hermann ERISA coverage did exist but had allegedly been improperly denied.

7

Id. (citing Brown Schools, Inc. v. Fla. Power Corp., 806 F. Supp. 146, 149 (W.D. Tex. 1992)); see also Cypress Fairbanks Med. Ctr. Inc. v. Pan-American Life Ins. Co., 110 F.3d 280, 284 & n.7 (5th Cir. 1997) (citing Metroplex approvingly and further clarifying that "the proper inquiry is whether the beneficiary under the ERISA plan was covered at all by the terms of the health care policy, because if the beneficiary was not, the provider of health services acts as an independent, third party subject to our holding in Memorial"). Here, like Metroplex, the patients are covered by their respective plans but the provider is dissatisfied with the amount it was reimbursed for its services under *the terms of the plans*. Plaintiff's complaint alleges that:

> Defendants' preferred provider health insurance plans generally provide a higher level of benefits to consumers who receive health care services from medical providers contracted with UHC either as "preferred" or "participating" medical providers. *Under the terms of most UHC plans*, if consumers receive services from noncontracted medical providers, consumers not only generally receive a lower percentage level of benefits, but UHC also pays the medical providers based upon an "allowed" amount only known to UHC.[7]

Thus Plaintiff, in its first fact paragraph, couches its complaint in terms of the *unfairness of the terms of the ERISA plans as administered by Defendants*. Additionally, Plaintiff's promissory

---

[7] Document No. 1, ex. C ¶ 9 (emphasis added).

estoppel claim seeks to recover additional reimbursement from Defendants, alleging that they made a promise to pay Plaintiff "a reasonable and fair amount for the medical services provided to its members," which Plaintiff claims it relied on to its detriment.[8] Any patient who was denied full benefits for the services they received could also have claimed that Defendants improperly denied payment for certain charges as not "reasonable and fair" under section 502(a), based on their plan terms. *See* Cleghorn v. Blue Shield of Ca., 408 F.3d 1222, 1226 (9th Cir. 2005) ("Any duty or liability that [the insurer] had to reimburse him 'would exist here only because of [the insurer's] administration of ERISA-regulated benefits plans' . . . . [Plaintiff's] claim therefore cannot be regarded as independent of ERISA." (quoting Davila, 124 S. Ct. at 2498)); Ambulatory Infusion, 2006 WL 1663752, at *8-9 (holding that plaintiff's state law breach of contract claim was completely preempted under ERISA because its claim was dependent on the ERISA plan terms and not on any independent legal duty).[9] Plaintiff's right to payment under the patients' plans is derivative of each

---

[8] Id. ¶ 26.

[9] Further, this result is "consistent with Congress' intent in passing ERISA, for allowing a third party provider to maintain state law claims which would otherwise be preempted under ERISA would permit the provider not only to expand the limited rights granted a plan beneficiary but also to circumvent the enforcement provisions of ERISA altogether simply by filing suit in state court under state law." Metroplex, 855 F. Supp. at 901.

patient's right under the applicable ERISA plan, and therefore is not independent of the plan. Davila, 124 S. Ct. at 2498 (a legal duty is not independent of ERISA if it "derives entirely from the particular rights and obligations established by [ERISA] benefit plans"). Plaintiff's state claim for promissory estoppel is completely preempted by ERISA, "giving this Court federal removal jurisdiction over the claim and supplemental jurisdiction over all remaining claims." Ambulatory Infusion, 2006 WL 1663752, at *9. Plaintiff's Motion to Remand must therefore be denied.

### IV. Order

Based on the foregoing, it is

ORDERED that Plaintiff Foundation Ancillary Services, L.L.C. d/b/a/ Surgical Monitoring Services' Motion for Remand (Document No. 28) is DENIED.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 17TH day of October, 2011.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE